UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | |
|---|---|
| DOUGLAS L. HALE, | ) |
| Claimant, | ) 1:20-CV-240 |
| vs. | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| Respondent. | ) |

**MEMORANDUM OPINION AND ORDER**

This matter is before the United States Magistrate Judge with the consent of the parties and by order of reference [Doc. 18] for disposition and entry of a final judgment. Claimant's Disability Insurance Benefits ("DIB") application under the Social Security Act, Title II, was denied on July 2, 2019, following a hearing before an Administrative Law Judge ("ALJ"). This action is for judicial review of the Commissioner's final decision per 42 U.S.C. § 405(g). Each party filed a dispositive motion [Docs. 19 & 20] and a supporting memorandum [Docs. 19-1 & 21]. For reasons set forth below, Claimant's Motion [Doc. 19] is **DENIED**, and the Commissioner's Motion [Doc. 20] is **GRANTED**.

I.  APPLICABLE LAW – STANDARD OF REVIEW

A review of the Commissioner's findings is narrow. The Court is limited to determining (1) whether substantial evidence supported the factual findings of the Administrative Law Judge ("ALJ") and (2) whether the Commissioner conformed to the relevant legal standards. 42 U.S.C. § 405(g); *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994); *see also Mebane v. Comm'r of Soc. Sec.*, 382 F. Supp. 3d 718, 721 (S.D. Ohio 2019). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact. *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 841 (6th Cir. 1986). The Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). At the same time, the Court may consider any evidence in the record, regardless of whether it was cited by the ALJ. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d. 528, 535 (6th Cir. 2001); *see also Kushner v. Comm'r of Soc. Sec.*, 354 F. Supp. 3d 797, 802 (E.D. Mich. 2019). A decision supported by substantial evidence must stand, even if the evidence could also support a different decision. *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010) (citing *Blakely*, 581 F.3d at 405); *see also Richardson v. Saul*, 511 F. Supp. 3d 791, 797 (E.D. Ky. 2021). On the other hand, a decision supported by substantial evidence "will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007); *see also Ackles v. Comm'r of Soc. Sec.*, 470 F. Supp. 3d 744, 752 (N.D. Ohio 2020).

A claimant must suffer from a "disability" as defined by the Act to be eligible for benefits. "Disability" includes physical and mental impairments that are "medically determinable" and so severe as to prevent the claimant from (1) performing his past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. 42 U.S.C. § 423(a). A five-step sequential evaluation applies in disability determinations. 20 C.F.R. § 404.1520. The ALJ's review ends with a dispositive finding at any step. *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). A full review addresses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Part 404, Subpart P, Appendix 1?

4. Considering the claimant's [Residual Functional Capacity], can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work — and also considering the claimant's age, education, past work experience, and RFC—do significant numbers of other jobs exist in the national economy which the claimant can perform?

*See* 20 C.F.R. § 404.1520. A claimant has the burden to establish benefits entitlement by proving the existence of a disability. *See Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *see also Bowermaster v. Comm'r of Soc. Sec.*, 395 F. Supp. 3d 955, 959 (S.D. Ohio 2019). It is the Commissioner's burden to establish a claimant's ability to work at step five. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990); *see also Jones v. Berryhill*, 392 F. Supp. 3d 831, 855 (M.D. Tenn. 2019).

## II. PROCEDURAL AND FACTUAL OVERVIEW

Douglas L. Hale, ("Claimant") completed an application for DIB on January 10, 2018. (Transcript p. 15) (reference to "Tr." and the page denote the administrative record). Claimant alleges an onset date of October 10, 2017. (Tr. 15). Claimant sought benefits due to "a right leg birth defect, numbness and tingling in the right leg, swelling in the ankles, back pain, and a learning disability." (Tr. 176). His claim was initially denied on March 20, 2018, and again upon reconsideration on October 17, 2018. (Tr. 15). Thereafter, Claimant requested a hearing before an Administrative Law Judge, which was conducted by Administrative Law Judge Frederick McGrath ("the ALJ") on August 5, 2019. *Id.*

3

In making his findings, the ALJ determined that Claimant had severe impairments of mild lumbar disc bulge, thoracic scoliosis, Schmorl's nodes, peripheral neuropathy, and obesity. (Tr. 17). He further found that Claimant had certain non-severe impairments such as kidney stones, for which ongoing treatment was not required. (Tr. 18). In formulating Claimant's RFC, the ALJ rejected the medical opinion of the State Agency consultants who had opined that Claimant could perform medium exertion work, noting that they had not personally examined Claimant and did not have before them all medical records which were ultimately included in the record. (Tr. 20). At the same time, the ALJ found the limitations assigned by Dr. Farber inconsistent with the record and rejected them, noting that she had examined Claimant on only one occasion. *Id.* Ultimately, the ALJ determined that Claimant was unable to perform any past relevant work but could perform limited work at the light exertion level so long as he performed only simple, routine tasks and was not required to climb ladders, ropes, or scaffolds, did not work at unprotected heights or around dangerous machinery, that driving was not a job requirement, and that he had a sit/stand option. (Tr. 19-20).

On appeal, Claimant presents a single issue for review. Specifically, Claimant asserts that the ALJ's RFC determination is not supported by substantial evidence because he failed to properly consider the opinion of Claimant's treating neurologist, Sharon Farber, M.D. [Doc. 19-1, p. 1]. Specifically, Claimant contends that when performing her examination of Claimant, Dr. Farber was unable to detect any pulses in Claimant's feet, and that her neurologic exam revealed:

> "neck discomfort on the right; thoracic scoliosis; abnormal gait due to right foot-drop; a positive heel/toe test on the right; mild pronation on the right and slightly slow fingers and weak thumb flexion; right biceps and forearm smaller than the left; weakness of right wrist extension; right leg diameter markedly smaller than the left; right psoas mildly painful to hip disease; some weakness of the right hamstring; inabilities to drop his right foot, wiggle, extend or curl his right toes; EHL weakness on the right; some plantar flexion and inversion; and absent eversion and probable mild contracture at the right ankle."

4

[Doc. 19-1, p. 4]. Claimant further states that Dr. Farber observed diminished pinprick sensation to his mid-shin and lack of vibration in the mid-foot. *Id.* At Dr. Farber's request, Tareck A Kadrie, M.D. performed a nerve conduction study, and in doing so found that Claimant's right peroneal motor and right sural sensory responses were absent as was his biotibial H reflexes and that he had a somewhat reduced amplitude on the right superficial peroneal sensory response. [Doc. 19-1, p. 4-5]. Dr. Kadrie further found that there was "evidence of an underlying moderate axonal motor sensory peripheral neuropathy affecting the right lower extremity." [Doc. 19-1, p. 5]. As a result of this testing, Dr. Farber then assigned Claimant significant physical limitations. *Id.* Thereafter, Claimant returned to Dr. Kadrie, who performed a physical examination noting that Claimant had diminished reflexes in the left leg and both ankles but that the sensory examination was inconsistent. *Id.* Dr. Kadrie performed a left leg nerve conduction study which showed "a slightly prolonged latency at the ankle with mildly reduced amplitudes and preserved conduction velocity, an absent left sural sensory response, a mildly prolonged left peroneal F wave, and the absence of the left biotibial reflexes." *Id.* As a result, Dr. Kadrie determined that the left leg study "showed evidence of mild to moderate axonal motor sensory peripheral neuropathy." *Id.*

Claimant then argues that in making his RFC determination, the ALJ simply states that "[t]he limitations assessed by Dr. Farber are wholly inconsistent with the physical examination performed throughout the record," without any analysis of in what way they are inconsistent. [Doc. 19-1, p. 9; Tr. 20]. Claimant then goes on to cite several findings in his medical records which he contends supports Dr. Faber's findings and limitations and demonstrates the ALJ's purported error. [Doc. 19-1, p. 12-14].

The Commissioner takes a different view, pointing to the ALJ's discussion earlier in his opinion of other findings contained in Claimant's medical records which tend to conflict with Dr.

Farber's findings. [Doc. 21, p. 11]. The Commissioner then emphasizes Claimant's sporadic treatment history and "only brief medication management that concluded with [Claimant's] refusal to take a drug test; his general reliance on simple, over-the-counter remedies for symptom control instead of seeking further professional care; and his conspicuous lack of any emergent treatment or hospitalization despite reports of debilitating symptomology. [Doc. 21, p. 11-12]. Lastly, the Commissioner states that these facts when combined with Dr. Farber seeing Claimant on only one occasion support the ALJ's conclusion that Claimant's condition is not as severe as Dr. Farber found it to be. [Doc. 21, p. 13].

## III. LEGAL ANALYSIS

The Court must now determine whether the ALJ properly assigned a residual functional capacity in accordance with applicable law and based on substantial evidence in the record. "Residual Functional Capacity" means "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs. . . ." 20 C.F.R. § Pt. 404, Subpt. P, App. 2(c). In assessing a claimant's RFC, applicable regulations provide the following guidance for the agency:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 C.F.R. § 404.1545(b). In rendering a decision about a claimant's RFC, an ALJ is prohibited from "defer[ring] or giv[ing] any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the Claimant's] medical sources. 20 C.F.R. § 404.1520c.

6

Case 1:20-cv-00240-CRW    Document 24    Filed 03/28/22    Page 6 of 11    PageID #: 400

Instead of simply deferring to medical sources, an ALJ is required to consider multiple factors in evaluating the evidence including (1) supportability; (2) consistency; (3) a source's relationship with the Claimant; (4) specialization; and (5) other supporting or contradicting factors. 20 C.F.R. § 416.920c. As other courts have noted, "[s]upportability and consistency will be the most important factors, and usually the only factors the ALJ is required to articulate." *Jones v. Berryhill*, 392 F. Supp. 3d 831, 839 (M.D. Tenn. 2019) (citing *Pogany v. Berryhill*, No. 4:18-CV-04103-VLD, 2019 WL 2870135, at *27 n. 7 (D.S.D. July 3, 2019)) (internal quotations omitted).

In assessing whether a medical opinion is supportable, the focus is on the relevance of the objective medical evidence and supporting explanations upon which the opinion is based. In other words, "[t]he more relevant the objective medical evidence and supporting explanations…, the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). In considering consistency, the focus is on how the opinions provided square with the overall record. Specifically, "[t]he more consistent a medical opinion(s)… is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s)… will be." 20 C.F.R. § 404.1520c(c)(2). Additionally, the ALJ is to consider the purpose of a medical source's treatment opinions. 20 C.F.R. § 404.1520c(c)(3)(iii) (In evaluating a doctor-patient relationship "[t]he purpose for treatment [a claimant] received from the medical source may help demonstrate the level of knowledge the medical source has of [the claimant's] impairment(s)."). When an ALJ engages in his or her review of the records, the ALJ need not "explain every piece of evidence in the record." *Bayes v. Comm'r of Soc. Sec.*, 757 Fed. Appx. 436, 445 (6th Cir. 2018).

The procedure outlined above is a significant departure from prior law which required the specific weighting of medical opinions and a presumption that greater weight should be afforded

to the opinion of a treating source, and the change provides greater latitude for an ALJ in determining whether to grant benefits. *See Hardy v. Comm'r of Soc. Sec.*, No. 20-10918, 2021 WL 3702170, at *6 (E.D. Mich. Aug. 13, 2021) (recognizing the new rule and noting the "importance of cogent explanations" or reasons being provided by ALJs regarding persuasiveness given the "greater latitude" afforded to them under these new regulations). This change did not impact the Court's standard for determining whether an ALJ's decision should be affirmed. The Court will continue to affirm the ALJ's ruling if it is based on substantial evidence, even if the Court might have reached a different conclusion after reviewing the evidence. *Richardson*, 511 F. Supp. 3d at 797. Despite this very deferential standard, the Court still must carefully consider whether the ALJ fully reviewed the record. *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (stating administrative courts may not focus on some evidence, while ignoring other evidence); *see e.g. Bunch v. Comm'r of Soc. Sec.*, No. CV 20-148-HRW, 2021 WL 3269258, at *2 (E.D. Ky. July 30, 2021). The requirement that an ALJ fully review the record is designed to protect a claimant from "bewilder[ment] when told by an administrative bureaucracy that she is not. . ." disabled when "[her] physician has deemed [her] disabled. . .." *Hardy*, 2021 WL 3702170, at *6 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).

In considering whether the ALJ's findings were based upon substantial evidence, the Court notes that "[s]ubstantiality of the evidence must be based upon the record taken as a whole." *Garner*, 745 F.2d at 388 (citing *Allen v. California*, 613 F.2d 139, 145 (6th Cir. 1980)). The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight and does not permit a decision to be focused and based upon some evidence while disregarding other pertinent evidence in the record. *Id.*; *see also Beavers v. Sec'y of Health, Educ. and Welfare,* 577 F.2d 383, 387 (6th Cir.1978); *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir.1978). The substantiality test is not satisfied if the decision is based upon only

some evidence in the record and ignores or fails to resolve a conflict created by countervailing evidence. *See Rogers v. Sec'y of Health and Human Servs.*, 786 F.2d 1166 (6th Cir. 1986). The Court must now determine whether the ALJ's decision was based on consideration of the full record before him.

In considering Claimant's assignment of error, the Court first notes that it has carefully reviewed the entire record in this matter. In doing so, the Court observes that there is merit in certain arguments made by each party. For instance, the Commissioner correctly notes that at an earlier point in his opinion the ALJ did outline in some detail the medical information contained in Claimant's records which appears to conflict with the limitations assigned by Dr. Farber. (Tr. 17-20). At the same time, Claimant properly observes that when the ALJ addressed the opinions of Dr. Farber, he did not directly state how the record evidence was "wholly inconsistent with the physical examination performed throughout the record." (Tr. 20). Certainly, had the ALJ taken the time to directly contrast Dr. Farber's opinions with other medical evidence of record it would have allowed Claimant and the Court to more readily understand how he viewed Dr. Farber's opinion. Further, Claimant correctly observes that the ALJ did not specifically discuss supportability and consistency of the medical evidence of record as he analyzed it. Still, what the Court must ultimately determine is whether, when viewed as a whole, the ALJ's opinion is supported by substantial evidence, was made only after he considered the entire record, and demonstrates that it was rendered in compliance with applicable law. *See* 42 U.S.C. § 405(g); *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009).

As an initial matter the Court notes that unlike in many disability cases, in the matter at hand both subjective and objective evidence are available which demonstrate that Claimant has limitations in his ability to perform work, a fact the ALJ acknowledged in making his ruling. (Tr. 20). In fact, despite the ALJ stating that he rejected Dr. Farber's opinion as to Claimant's limitations, the Court takes note that he did adopt some of the limitations and even assigned

9

Claimant certain limitations beyond those assigned by Dr. Farber[1]. (Tr. 19). In rejecting Dr. Farber's assigned limitations, the ALJ observed that she only saw Claimant on one occasion. (Tr. 20). Additionally, the ALJ pointed out that while Claimant underwent the diagnostic testing for which Dr. Farber referred him, there was no evidence that he sought additional treatment after receiving the results. *Id.* In fact, Claimant's medical records reflect that the only treatment he received was brief medication management. (Tr. 270-83). When Claimant last sought a refill of his medication, he refused the blood and drug testing required before it could be refilled and as a result, the medication was discontinued. (Tr. 272). Additionally, the ALJ correctly noted that on multiple occasions, Claimant's medical records from his family physician indicate that Claimant's gait was normal and/or that he was not experiencing back pain. (Tr. 229-30, 232, 270, 274, 277, 280-81).

After considering the record in this matter and the ALJ's full decision, the Court finds that the decision is supported by substantial evidence and that while he did not state as specifically as would be preferable that he was considering the supportability and consistency of the medical opinions with the record overall, the analysis performed by the ALJ, and the conclusions reached reflect that he did so. *See Hardy v. Comm'r of Soc. Sec.,* 2021 WL 4059310, at *2 (S.D. Ohio Sept. 7, 2021) (noting that while an ALJ must explain how supportability and consistency were considered, he or she is not required to specifically use the terms in his or her analysis). In determining that substantial evidence supports his decision, the Court notes that the medical evidence before the ALJ was somewhat limited and agrees with the ALJ that it contains conflicting findings. The Court also cannot ignore the limited treatment that Claimant sought. *See Branon v. Comm'r of Soc. Sec.,* 539 F. App'x 675, 678 (6th Cir. 2013) (observing that conservative treatment indicated condition was not disabling, emphasizing Claimant discontinuing medication

---

[1] For example, Dr. Farber opined that Claimant could occasionally operate a motor vehicle as part of his job duties, but the ALJ found he should never operate them for work purposes. (Tr. 19, 255).

management). Additionally, the fact that Claimant discontinued treatment with medication instead of submitting to blood and drug tests is problematic[2]. These observations by the Court in no way overlook Claimant's significant and documented health problems; however, given that it is Claimant's burden to prove that he was disabled during the relevant timeframe, the Court simply cannot conclude that the ALJ erred in concluding that Claimant had not met his burden given the record he had before him. *See* 20 C.F.R. § 404.1520(g).

## IV. CONCLUSION

After a careful review of the entire record in this cause, the Court finds that substantial evidence supports the ALJ's determination that Claimant was not suffering from a disability during the claimed period. Accordingly, Claimant's Motion for Summary Judgment [Doc. 20] is **DENIED** and Respondent Commissioner's Motion for Summary Judgment [Doc. 22] is **GRANTED**.

SO ORDERED:

/s Cynthia Richardson Wyrick
United States Magistrate Judge

---

[2] While Claimant stated that he didn't want to take addictive medication and that the medication he was prescribed did not really help, that does not explain why Claimant was seeking to refill his medication and only chose not to continue taking it after being told it would not be refilled further without him submitting to a drug and blood test. (Tr. 41-42, 272).